49  71<br>62 204

MARY MYERS AND OTHERS vs. PATRICK DUNN.

The owner of a tract of land bounding on a highway on the east and on another on the west, sold a lot on the west side to *C*, reserving in the deed a right of way from the centre lot to the west highway, "for the purpose of carting wood, &c.;" and afterward sold the centre lot to *K*, with the right of way across *C's* lot reserved in the deed to *C*. The lot conveyed to *K* was on a rocky ridge from which the descent to the east highway was too steep for teams to pass. It was at the time wood and pasture land, but he afterwards built a dwelling house upon it. Held—

1. That the right of way through *C's* lot was limited to the purpose of carting wood and was not enlarged by the abbreviation "&c." appended.
2. That the owners of the *K* lot were not debarred from a way of necessity to the east highway by reason of the limited right of way over *C's* land to the west highway.
3. That it was no reason against the way of necessity to the east highway that the descent was so steep and difficult.

4. That the way of necessity to the east highway was not limited to such use as was necessary in the condition in which the land conveyed to *K* was at the time, but might be used for purposes made necessary by the erection of the dwelling house upon it.

A plea of a right of way of necessity described the way as passing "from a certain public highway in said county into, through, over and along the said close in which, &c."—Held that this brief form of describing such a way was sanctioned by long practice in this state, and was sufficient.

TRESPASS *qu. cl. fr.*; brought by appeal from a justice of the peace to the Court of Common Pleas for Hartford County.

The defendant pleaded a right of way of necessity over the *locus in quo* and that he was in the exercise of that right in doing the acts complained of. The grantor of the defendant had purchased the land to which the defendant claimed the right of way of the administrators on the estate of Peter Myers, the *locus in quo* lying between the land of the defendant and the public highway. The defendant's allegations with regard to the way of necessity claimed by him were as follows:—"And said defendant further says that, at the time of said alienation and conveyance of the said close now of the defendant, the said Kelly, who by said conveyance became seised thereof, not having any other way to said close, now of the defendant, than from and out of a certain public highway in the county aforesaid into, through, over and along the said close in which, &c., by reason thereof the said Kelly after such conveyance necessarily, whilst he continued seised of said close now of the defendant, ought to have had and of right had, and the defendant so having the estate of the said Kelly as aforesaid before and at the several times when, &c., necessarily had and of right ought to have had, and still of right ought to have, a convenient way to the said close now of the defendant, from said highway into, through, over and along the said close in which, &c." The plaintiff demurred specially to this plea on the ground that it did not properly describe the way of necessity which was claimed. The court overruled the demurrer, and the plaintiffs filed a replication denying

that the defendant had the way of necessity claimed, upon which issue was joined. The court made the following finding of facts:

Peter Myers, who died intestate in 1863, was at the time of his death the owner of a tract of land extending from a highway on the east to another highway on the west. The land now owned by the defendant lies on the east side and top of a high mountain ridge which runs nearly north and south about midway between the two highways. The *locus in quo* lies between this land and the east highway. The land between the defendant's land and the west highway was conveyed on the 19th of October, 1863, by the administrators of Myers to D. H. Carpenter, the deed containing the following reservation:—"reserving the right of way to said administrators and assigns across said premises for the purpose of carting wood, &c., from the lot still owned by said estate known as the Holcomb lot, said right of way to be used at proper times and in a reasonable manner."

The administrators of Myers conveyed to Peter D. Kelly the land now owned by the defendant on the 9th of September, 1865, the deed containing the following clause —"also granting to said grantee a right of way across said Carpenter's land which we the said grantors now possess to cross his, the said Carpenter's land."

At the time of the purchase of this land by Kelly it was wholly wood land and pasture, but about two years after the purchase Kelly built a dwelling house upon it which has been occupied by the defendant since his purchase of the land. On the 5th of November, 1877, Kelly conveyed his land by a warranty deed to the defendant, the deed conveying among other rights the following:—"and also the right which I now enjoy to cross the land of Daniel H. Carpenter."

The land conveyed to Kelly was never contiguous to any highway. It was made up of two lots known as the Holcomb lot and the Pettibone lot. The path across the *locus in quo* over which the defendant claims a right of way is one which had been used by Myers when he owned

the land now owned by the defendant for the purpose of going back and forth between that land and the east highway. The defendant's land falls off toward the east, much of it at the rate of one foot in three. It is not practicable on account of the steepness and rocky character of the land to maintain a path for horses or teams from the defendant's house easterly to the highway. The house is situated near the north east corner of the defendant's land. Neither Kelly nor the defendant ever crossed the *locus in quo* to the east highway. There is and for many years has been a crossing from the defendant's land over the Carpenter lot to the west highway. This was an old crossing in 1863 and was then and ever since has been a well defined path and an easy one for horses and teams. Kelly drew the timbers for his house over this path. Before 1863 it had been used by Myers for carting and travel from the defendant's land to the west highway, and it was used by Kelly from time to time after his purchase for carting and travel until he was enjoined by Carpenter from using it.

Upon these facts the defendant claimed as matter of law that he had a way of necessity over the *locus in quo* to the east highway. The plaintiffs claimed that by the reservation of a way over the Carpenter land and a conveyance of that right of way to Kelly and by him to the defendant, the defendant had a right of way over the Carpenter land to the west highway for all reasonable purposes and therefore could not have a way of necessity over the *locus in quo.* The court (*Calhoun, J.,*) overruled the claim of the plaintiffs, and held that the right of way reserved in the deed to Carpenter did not afford a way for all reasonable and necessary purposes to and from the defendant's land and that therefore the defendant had a way of necessity over the *locus in quo*, and rendered judgment for the defendant.

The plaintiffs brought the record before this court by a motion in error.

*L. E. Stanton* and *W. C. Case*, with whom was *W. W. Bidwell*, for the plaintiffs.

1. The demurrer to the second plea of the defendant should have been sustained. A way of necessity is a matter of strict right. The presumptions are against it. It should be pleaded strictly. Washb. on Easements, 574; *Wright* v. *Rattray*, 1 East, 377; *Colchester* v. *Roberts*, 4 Mees. & Wels., 769; *Russell* v. *Jackson*, 2 Pick., 574; *Nichols* v. *Luce*, 24 id., 102; 1 Chitty Pl., 505, 534; *Gaylord* v. *Payne*, 4 Conn., 194; *Griswold* v. *Mather*, 5 id., 438; *Collins* v. *Prentice*, 15 id., 39.

2. The court erred in holding that upon the facts found the defendant has a way of necessity over our land. Kelly took no way of necessity unless we sold him an inaccessible lot. *Collins* v. *Prentice*, 15 Conn., 39. But his lot was not inaccessible. It was then and is now more easily accessible from the west highway through the Carpenter lot over level ground, than over the rocky ridge and across the *locus in quo*. The court distinctly finds that a path for horses and teams can not be maintained from the defendant's house to the east highway, and Kelly had and the defendant has under him a good and sufficient right of way across the Carpenter land. A way of necessity is limited to the actual necessity. When the necessity ceases the right ceases. *Collins* v. *Prentice*, 15 Conn., 39; *Pierce* v. *Selleck*, 18 id., 321; *Seeley* v. *Bishop*, 19 id., 134; *Smith* v. *Tarbox*, 31 id., 587; *Viall* v. *Carpenter*, 14 Gray, 126. The right of way across the Carpenter land was "for the purpose of carting wood, &c.," and was also a "right of way to be used at proper times and in a reasonable manner." It was not, therefore, to be used merely for carting wood. Such a reservation will be construed so as to make it beneficial.

3. The defendant, whose grantor bought a wood and pasture lot, having a way to the west highway suited to a wood lot, cannot now set up new necessities. He cannot now demand a way to the east suited to a building lot. That would be merely a way of convenience. He is not entitled to such a way. *Pierce* v. *Selleck*, 18 Conn., 329; *Robbins* v. *Wolcott*, 19 id., 367, 372. A way of necessity is limited to the necessity as it existed at the time of the

purchase. *Corporation of London* v. *Riggs*, 42 L. Jour. Reps., (N. S.), 580. The necessity must not be created by the party claiming the right of way. That his own way is too steep or too narrow does not alter the case. Washb. on Easements, 163; *M'Donald* v. *Lindall*, 3 Rawle, 492; *Valley Falls Co.* v. *Dolan*, 9 R. Isl., 489.

*W. W. Perry*, for the defendant.

PARDEE, J. Peter Myers died in 1863, owning a piece of land bounded on the east and west by highways, on the north and south by proprietors; in that year his administrators conveyed the western end to one Carpenter, reserving a right of way over the same "for the purpose of carting wood, &c.," from the adjoining lot on the east, the "right of way to be used at proper times and in a reasonable manner." In 1865 they conveyed the central portion to one Kelly, together with the right of way across Carpenter's land, and in 1877 Kelley conveyed the same to the defendant; the plaintiffs, heirs of Peter Myers, retained the eastern end. Over this the defendant passed; for this he was sued; his defense is that he had a right of way by necessity.

In his plea the defendant gives no more particular or definite description of the way or of the land upon which it rests than that it passes "from and out of a certain public highway in the county aforesaid into, through, over and along the said close in which," &c. The plaintiffs insist that the plea is insufficient by reason of this indefiniteness of description.

But we believe that this abbreviated form has so long been in actual use that it may be said now to have the sanction of this court; and as it is convenient, and not productive of injury, we are disposed to sustain it.

The reserved right to cross the Carpenter lot is limited to the single purpose of carting wood. The addition of the abbreviation " &c." in the reservation of a way for a particular and specified use over land conveyed, is by reason of its vagueness and uncertainty without meaning or effect.

The language is the grantor's; he is taking for himself something from the fullness of the grant made; he secures only what he names with certainty. Therefore the administrators upon Myers's estate carved therefrom and conveyed to the defendant's grantor a piece of land which neither touched any public way, nor had appurtenant to it any such right to pass over the adjoining land of strangers to and from a public way as would secure to him the most beneficial enjoyment of his grant; they retained the *locus in quo* extending from the granted land to a public way. Here are all the requisite conditions for a way of necessity for all purposes over the reserved premises, there being no waiver by the grantee of his right to it.

When the administrators conveyed the land to the defendant's grantor it was partly in wood, partly in pasture, and partly under cultivation, but without buildings. It was in this condition when the defendant purchased it, but he has since erected a dwelling house thereon. The plaintiffs claim that inasmuch as both the defendant's grantor and himself bought wood and pasture land, having a way adapted to it in that condition, he is not now entitled to a way over the *locus in quo* for the increased necessities of a lot having a house upon it.

But this claim is without foundation. The owner of land has a right to the most profitable use, the most beneficial enjoyment thereof, subject to limitations not necessary here to be mentioned. He may erect buildings and raise grain upon, and dig ores beneath it; and when, by their conveyance to the defendant's grantor the administrators imposed, in favor of the land granted, a way of necessity over the *locus in quo*, they are to be presumed to have intentionally done it for any or all of these purposes; and the law will declare that it may be used for all, for it desires and encourages proprietors to increase the value of their land by building houses upon and cultivating it.

Peter Myers, while owning both the defendant's and Carpenter's lots, was accustomed to pass from the former over the latter by a well defined path to a highway; after

his purchase the defendant's grantor used the same way until restrained by injunction; and not until 1877 did he or the defendant claim a way of necessity over the *locus in quo;* and the latter is so precipitous and rocky that a way over it for carts or wagons is impracticable. But these facts are not an answer to the defendant's claim. He asserted his right to cross before the statute of limitations barred it, and although natural obstacles have hitherto prevented his enjoyment of it in as full and convenient a manner as he desired, yet he used it to the utmost practicable extent, with a claim to all possibilities. It is not for the plaintiffs to insist that because nature has made it difficult for the defendant to enjoy to the most beneficial extent that which they have granted and taken pay for, therefore he shall have no use at all.

The plaintiffs claim further, that inasmuch as both the defendant's grantor and himself purchased land to which there was appurtenant a limited right of way over the Carpenter lot, of the precise character of which they had notice by their respective deeds, they are now to be presumed neither to have purchased nor intended to purchase any other, and are to be stopped from claiming the way of necessity over the *locus in quo.* We cannot assent to this proposition. Upon the conveyance of the piece of land inaccessible except for a single purpose, in the absence of an express agreement by the grantee to accept it in that condition, the law instantly laid in its favor upon the *locus in quo* the burden of an unlimited way of necessity for all legal uses; in the absence of such agreement the law will not presume that the grantee accepted in lieu of this a right less in extent and value; on the contrary it will presume that the grantor received payment for, and intended to convey, land which, in addition to this unlimited way, had another for a specified single purpose.

There is no error in the judgment complained of.

In this opinion the other judges concurred.