MARK J. CHRISTENSEN *v.* LINDA L. REED ET AL.
(AC 27327)

McLachlan, Gruendel and Lavine, Js.

Argued September 17, 2007—officially released February 5, 2008

*Lloyd L. Langhammer*, with whom, on the brief, was *Meredith E. Russell*, for the appellant (plaintiff).

*B. Paul Kaplan*, for the appellees (named defendant et al.).

*Kathleen M. Cerrone*, with whom, on the brief, was *William H. St. Onge*, for the appellee (defendant S & P Ventures, LLC).

McLACHLAN, J. The plaintiff, Mark J. Christensen, appeals from the judgment of the trial court finding in favor of the defendants, Linda L. Reed, Scott R. Reed and S & P Ventures, LLC (S & P). The plaintiff commenced a two count action against the defendants, seeking to quiet title to a certain right-of-way and seeking a declaratory judgment of an easement by necessity over the defendants' properties.[1] On appeal, the plaintiff claims that the court improperly (1) concluded that he was not entitled to an easement by necessity and (2) required him to have searched the titles of all of the abutting properties. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issues on appeal. The plaintiff owns a twenty-five acre parcel of land in Canterbury. The Reeds own property that abuts the plaintiff's parcel of land to the west, and S & P owns property that was carved out of the Reeds' parcel, which, as a result, borders the Reeds' property to the west.[2] The defendants' properties have direct access to North Society Road, a highway in Canterbury. The root of the plaintiff's title to the property can be traced back to a deed dated January 15, 1880, from Francis B. Pellet to Thomas Shea. The deed contained a right-of-way, or easement, to access a wood lot retained by the plaintiff's predecessor in title. The

---

[1] The plaintiff is appealing from only the portion of the judgment concerning count two of his complaint, asserting that he is entitled to an easement by necessity.

[2] The court found that the property now owned by the Reeds and S & P was once one parcel of land. Moreover, the plaintiff and the defendants share a common grantor, Francis B. Pellet. "The language regarding a right-of-way is contained solely in the plaintiff's chain of title from Pellet to [Thomas] Shea. The defendants' chains of title, from Francis B. Pellet to Mary S. Chase, dated March 14, 1889, at Volume 29, Page 416 of the Canterbury land records, contains no habendum clause or reservation of a right-of-way in the name of the grantor of the servient estate."

right-of-way was subject to a seasonal limitation from October 1 to April 1 of each year. This right-of-way appears only once in the chain of title of the parties between 1880 and 1984. The plaintiff acquired title to the property in 1984 by way of five quitclaim deeds and a sixth document, which contained an " 'assignment of interest' . . . ." None of the conveyances to the plaintiff contained a habendum clause or other language purporting to convey the right-of-way across the defendants' properties, despite the fact that without the right-of-way the parcel is landlocked.

On May 19, 2003, the plaintiff served his complaint, seeking (1) to quiet title to the right-of-way across the defendants' properties and (2) a declaratory judgment of an easement by necessity over the defendants' properties. On January 6, 2006, the court found in favor of the defendants on both counts. The court rejected count one of the plaintiff's claim on two grounds. First, the court concluded that the right-of-way had been abandoned because there was clear evidence of physical nonuse of the right-of-way, and it was absent from both the plaintiff's and the defendants' chains of title in subsequent recorded deeds. Second, the court held that the plaintiff's claim for the right-of-way was barred by the Marketable Record Title Act (act)[3] because the plaintiff's predecessors in title failed to include the easement in the deeds in the defendants' chains of title. As to count two of the complaint, the court concluded that the plaintiff's property is landlocked but not entitled to the claimed right-of-way because the plaintiff failed to meet his burden of proof in establishing an easement by necessity. Specifically, the court stated that "it is

---

[3] See General Statutes §§ 47-33b through 47-33*l*. General Statutes § 47-33c provides in relevant part that "[a]ny person . . . who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title to that interest . . . ."

not abundantly clear[4] . . . that the plaintiff has any reasonable necessity for the claimed easement *over the defendants' property*. The defendants' property abuts the plaintiff's property to the west, but not to the north, south or east. The evidence does not establish that the plaintiff's property is inaccessible save over the defendants' lands; therefore, the court cannot find an easement by necessity." (Emphasis in original.) This appeal followed.

## I

The plaintiff first claims that the court improperly concluded that he was not entitled to an easement by necessity over the defendants' properties. This contention is twofold. First, the plaintiff asserts that the court improperly found facts and improperly applied the law as to easements by necessity. Second, the plaintiff contends that the court failed to distinguish between a license and an interest in real estate. We will consider each claim in turn.

## A

The plaintiff claims that the court misapplied the law relating to easements by necessity when it concluded that his parcel was landlocked but held that he did not prove that reasonable enjoyment of the land required an easement by necessity. Particularly, the plaintiff argues that the court improperly found that there was no evidence that his parcel was inaccessible by an alternate means. In opposition, the defendants assert that the court properly found that there was no need for an easement by necessity because the plaintiff failed to satisfy his burden of proof.[5]

---

[4] We do not conclude that the court's use of the phrase "abundantly clear" indicates that the court employed a higher standard of proof.

[5] On appeal, S & P also asserts alternate grounds for affirmance, claiming that the plaintiff abandoned the easement and that the easement is barred by the act. Because we conclude that the plaintiff failed to satisfy his burden of proof that he was entitled to an easement by necessity, we need not address these arguments.

The plaintiff's claim raises a question of law, and, therefore, our review is plenary. See *Kelley* v. *Tomas*, 66 Conn. App. 146, 153, 783 A.2d 1226 (2001). "The court's factual findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Pender* v. *Matranga*, 58 Conn. App. 19, 23, 752 A.2d 77 (2000).

"The requirements for an easement by necessity are rooted in our common law. . . . [A]n easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee. . . . [T]o fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity element need only be a reasonable one." (Citation omitted; internal quotation marks omitted.) *First Union National Bank* v. *Eppoliti Realty Co.*, 99 Conn. App. 603, 608, 915 A.2d 338 (2007). "Although the requirements for an easement by necessity once included a showing of unity of ownership; *Hollywyle Assn., Inc.* v. *Hollister*, [164 Conn. 389, 399, 324 A.2d 247 (1973)]; our Supreme Court has eliminated that requirement." *First Union National Bank* v. *Eppoliti Realty Co.*, supra, 608 n.6. Moreover, although it is true that "[a]n easement of necessity may occur when a parcel has become landlocked from outside access such that the owner would have no reasonable means

of ingress or egress except over lands promised by another and a right-of-way is necessary for the enjoyment of the parcel . . . [t]he inverse also is true; that is, a common-law right-of-way based on necessity expires when the owner of a dominant estate acquires access to a public or private road through another means." (Citations omitted.) *Pender* v. *Matranga*, supra, 58 Conn. App. 26.

In his complaint, the plaintiff alleged that he was entitled to the claimed right-of-way because it "is the *exclusive manner of access* between [his] [p]roperty and the public highway known as North Society Road, and represents the *only* access to [his] [p]roperty from any highway." (Emphasis added.) At trial, the court concluded that the plaintiff had not satisfied his burden of proof as to the right-of-way being the " 'exclusive manner of access' . . . ." Particularly, the court found that the "evidence presented to the court demonstrate[d] that the plaintiff and/or his guests had accessed his property on several occasions by alternate access routes. Additionally, the plaintiff's title searcher never completed a full title search on any of the abutters' properties to the north, south or east of the plaintiff's parcel. . . . [I]t is not abundantly clear to the court that the plaintiff has any reasonable necessity for the claimed easement *over the defendants' property*."[6] (Emphasis in original.)

---

[6] At trial, the plaintiff testified that he and several individuals had accessed his property on five different visits by means other than the claimed right-of-way:

"Q. [W]hen the historical society went to your property, did they access it through the cart path or through an alternate access?

"A. Alternate route.

"Q. When [surveyor Fred Finn] went to your property twice . . . he accessed it through alternate accesses, according to his testimony. Once from the east, I believe, and once from the west.

"A. That's true. And he also walked the cart path and measured that out. So, that's an access, is it not?

"Q. And when the loggers took the logs off your property the two times it was logged, that was through alternate access and . . . .

The plaintiff challenges this decision claiming that under *Myers* v. *Dunn*, 49 Conn. 71 (1881), and its progeny[7] the "law presumes the intent of the common grantor (Francis B. Pellet) was to permit [the] easement to be for all purposes to ensure the 'most profitable use, the most beneficial enjoyment' of [the] easement . . . ." (Citation omitted.) The plaintiff further contends that because the court found the parcel was landlocked, it should have then concluded that he was entitled to an easement by necessity. Thus, the plaintiff argues that the court misapplied the law in finding that there was no easement by necessity.

Conversely, the defendants argue that because the plaintiff alleged in his complaint that the right-of-way was the "exclusive manner of access" to his property, he had the burden of proving that the claimed right-of-way was the exclusive manner of access and that he failed to do so.[8] In his reply brief, the plaintiff takes issue

"A. Correct."

The plaintiff further testified: "I always had to obtain permission to access my lot 6. I could never go over it freely. . . . I could not have accessed lot 6, other than my cart path, had they [his neighbors] refused [access]."

[7] The plaintiff's contentions rest on his analysis of Connecticut case law concerning easements by necessity starting with *Myers* v. *Dunn*, supra, 49 Conn. 71. The plaintiff argues that under the *Myers* definition of an easement by necessity, all he had to establish was that the "owner of land has a right to the most profitable use, the most beneficial enjoyment thereof . . . ." Moreover, under later decisions, the plaintiff argues citing *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 398–99, that this definition was expanded to include a broader definition of necessity, which can be fulfilled by a less than absolute need of the party claiming the right-of-way. Thus, the plaintiff claims that he satisfied his burden of showing that he was entitled to an easement by necessity. The plaintiff, however, did not rely on this case law as the theory under which he commenced the action. Instead, the plaintiff asserted that the claimed right-of-way was the *exclusive* means of access to his property. Parties cannot raise claims on appeal that are not raised at trial.

[8] Even though S & P stated in its brief that "[i]f the plaintiff had not alleged exclusivity in his complaint, it is not clear whether he could have stated a cause of action for an easement by necessity," we agree with the court's conclusion that there was also no evidence to support the plaintiff's claim that he has a reasonable necessity for the claimed easement.

with the defendants' argument concerning exclusivity, claiming that the term exclusive is merely an adjective and has no evidentiary value. The plaintiff asserts that under Connecticut case law there is no authority that requires proof of "exclusivity" for access in an easement by necessity claim. Although this contention may be an accurate characterization of the law, the plaintiff specifically chose to plead exclusivity.[9] Moreover, the court noted that although the plaintiff had not satisfied his burden of establishing exclusivity of access, he also did not adduce sufficient evidence to demonstrate that he had a reasonable necessity. The court stated that "it is not abundantly clear to the court that the plaintiff has any reasonable necessity for the claimed easement *over the defendants' property*." (Emphasis in original.)

In reaching its conclusion, the court took into account the evidence that on five separate occasions people gained access to the plaintiff's parcel of land by means other than through the defendants' land. The court also found that "the plaintiff's title searcher never completed a full title search on any of the abutters' properties to the north, south or east of the plaintiff's parcel." The Reeds argue that this was the correct result because "the plaintiff did not offer any evidence of a title search of the Shea chain of title to the north even though Shea was an abutter to the plaintiff's property and the same name had owned the abutting property for seventy consecutive years. . . . The . . . 'surrounding circumstances' considered by the trial court include[d] the plaintiff's failure to present evidence concerning any rights-of-way over the Shea parcel to the northeast of the plaintiff's land. It is likely that the 1880

---

[9] "The plaintiff is permitted to prove at trial a theory of liability not specifically pleaded if the pleadings give notice of the transactions or occurrences intended to be proved, and the defendant does not demonstrate any prejudice . . . ." 61A Am. Jur. 2d, Pleading § 139 (1999), citing *Cole* v. *O'Tooles of Utica, Inc.*, 222 App. Div. 2d 88, 643 N.Y.S.2d 283 (1996).

right-of-way was limited to the winter months to drag wood across the frozen ground and wetlands to the west because the same person (Shea) probably owned the abutting property to the east and did not need an easement for any other purpose." (Citation omitted.) In reply, the plaintiff claims that the Reeds' argument is "pure speculation." Pure speculation or not, the principal elements of an easement by necessity remain the same, which are whether a common grantor left a parcel landlocked and whether there is a reasonable necessity for ingress and egress over the burdened land. See *Pender* v. *Matranga*, supra, 58 Conn. App. 26. If there were other modes of ingress and egress, the plaintiff had the burden to prove, at the least, that the claimed right-of-way was reasonable and that the alternative modes did not exist. Here, even though the plaintiff claimed exclusivity of access, he did not meet even the minimum burden of reasonableness, nor did he demonstrate that there were no alternate reasonable modes of access. Thus, the court correctly concluded that because the plaintiff's title searcher never completed a full search, it was not convinced that the plaintiff's property is "inaccessible save over the defendants' lands . . . ."[10]

## B

The plaintiff next claims that the court failed to distinguish between a license and an interest in real property.

---

[10] Moreover, in this appeal, the defendants assert that the plaintiff is incorrectly attempting to expand the easement to a year-round easement even though at trial he claimed only a six month right-of-way. The following colloquy occurred during the plaintiff's testimony:

"[The Court]: . . . Are you looking to expand your right-of-way to twelve months?

"[The Plaintiff]: Well, through negotiations if it gets settled, then . . . .

"[The Court]: Well, we're not talking about settlement; we're on trial.

"[The Plaintiff]: Right.

"[The Court]: You're not asking this judge to expand . . .

"[The Plaintiff]: No."

Because this court finds no such right-of-way, this issue is moot.

The plaintiff asserts that the court's finding that the "evidence does not establish that the plaintiff's property is inaccessible save over the defendants' lands" indicates that the court misunderstood the law concerning licenses because a license does not convey an interest in land. "[A] license in real property is a mere privilege to act on the land of another, which does not produce an interest in the property . . . ." (Internal quotation marks omitted.) *Mulle* v. *McCauley*, 102 Conn. App. 803, 814 n.2, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007). "Generally, a license to enter [a] premises is revocable at any time by the licensor." (Internal quotation marks omitted.) *Walton* v. *New Hartford*, 223 Conn. 155, 163, 612 A.2d 1153 (1992). "[A] license must be exercised only in the manner and for the special purpose for which consent was given." (Internal quotation marks omitted.) *Miller* v. *Grossman Shoes, Inc.*, 186 Conn. 229, 237, 440 A.2d 302 (1982).

The plaintiff argues that because the court considered the permissive entries onto his land, it misapplied the law concerning easements and licenses. Specifically, the plaintiff points to the evidence that on five different occasions his parcel was accessed by means other than the claimed right-of-way because he sought permission from his neighbors. The plaintiff claims that because he was given permission by his neighbors, which would create a revocable license, this fact does not mean that he had alternate modes of access to his parcel. S & P argues that "[r]egardless of whether the plaintiff's property could be accessed through [a] license or through an interest in real estate, the plaintiff had to prove exclusivity of access to prove the allegations of his complaint." We agree with S & P. Although the plaintiff might have had a license on those five separate occasions, this does not change the fact that he failed to meet his burden of proof to establish the claimed easement by necessity.

## II

The plaintiff next claims that the court improperly required him to have searched the titles to all of the abutting properties. The plaintiff argues that because the court found one common grantor for the defendants' and plaintiff's properties, requiring a full search of the titles of the owners of abutting property was irrelevant to ascertaining the intent of the common grantor. Furthermore, he claims that the word "exclusive" does not require such a search of the abutting property. S & P disagrees, asserting that the court did not misapply the law because a title search was just "one way that the plaintiff could have met his burden to show that the one easement he sought over the defendants' property was the only means of access." S & P correctly asserts that a full title search of all of the abutting properties would have shown whether there were other easements that were not in the plaintiff's chain of title but may have been in one of the abutting owners' chains of title.[11] The plaintiff had the burden to prove that there were no reasonable alternate modes of access, and he failed to satisfy this burden. Thus, the court correctly concluded that he did not satisfy his burden of proof and that the evidence concerning the abutting property would not have satisfied his burden, particularly where one of the abutting properties was owned by a Shea, which was the name of one of the plaintiff's predecessors in title. We agree with the court that such a search would have disclosed the existence or absence of another means of access.

The judgment is affirmed.

In this opinion the other judges concurred.

[11] "One seeking an easement by necessity has the burden to prove the existence of such easement, and that the easement is reasonably necessary for the enjoyment of the land, by clear and convincing evidence. The burden of proving that an alternative mode of access is not available is also on the person claiming the easement by necessity." 25 Am. Jur. 2d, Easements and Licenses § 116 (2004).